UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHERINE FINGER,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>LIFE STORAGE, INC., MARK G. BARBERIO, JOSEPH V. SAFFIRE, DANA HAMILTON, SUSAN HARNETT, ARTHUR L. HAVENER, JR., EDWARD PETTINELLA, DAVID L. ROGERS, and STEPHEN R. RUSMISEL,<br><br>　　　　　　Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Katherine Finger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.　This is a stockholder action brought by Plaintiff against Life Storage, Inc. ("Life Storage" or the "Company") and the members of Life Storage's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge Life Storage with Extra Space Storage Inc. ("Extra Space") (the "Proposed Transaction").

2. On April 2, 2023, Life Storage entered into an Agreement and Plan of Merger with Life Storage LP, Extra Space, Extra Space Storage LP ("Extra Space OP"), Eros Merger Sub, LLC, a wholly owned subsidiary of Extra Space ("Extra Space Merger Sub"), and Eros OP Merger Sub, LLC, a wholly owned subsidiary of Extra Space OP ("Extra Space OP Merger Sub") (as amended on May 18, 2023, the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Life Storage shareholders will receive 0.895 shares of Extra Space common stock for each share of Life Storage common stock they own.

3. On June 6, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Life Storage stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for Life Storage, Extra Space, and the combined company; and (ii) the financial analyses that support the fairness opinions provided by the Company's financial advisors Wells Fargo Securities , LLC ("Wells Fargo") and BofA Securities, Inc. ("BofA").

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Life Storage stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Life Storage stockholders to vote on the Proposed Transaction is currently scheduled for July 18, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Life Storage's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore,

Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Life Storage's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Life Storage common stock.

10. Defendant Life Storage is a Maryland corporation, with its principal executive offices located at 6467 Main Street, Williamsville, New York 14221. Life Storage's shares trade on the New York Stock Exchange under the ticker symbol "LSI."

11. Defendant Mark G. Barberio has been Non-Executive Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Joseph V. Saffire has been Chief Executive Officer and a director of the Company at all relevant times.

13. Defendant Dana Hamilton has been a director of the Company at all relevant times.

14. Defendant Susan Harnett has been a director of the Company at all relevant times.

15. Defendant Arthur L. Havener, Jr. has been a director of the Company at all relevant times.

16. Defendant Edward Pettinella has been a director of the Company at all relevant times.

17. Defendant David L. Rogers has been a director of the Company at all relevant times.

18. Defendant Stephen R. Rusmisel has been a director of the Company at all relevant times.

19. Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Life Storage is a self-administered and self-managed equity real estate investment trust that is in the business of acquiring and managing self-storage facilities. The Company operates more than 1,150 storage facilities in 37 states and the District of Columbia. Life Storage serves more than 675,000 customers, including both residential and commercial storage customers with storage units rented by month.

4

**The Proposed Transaction**

21. On April 3, 2023, Life Storage announced that it had entered into the Proposed Transaction, stating, in relevant part:

> SALT LAKE CITY and BUFFALO, N.Y., April 3, 2023 /PRNewswire/ -- Extyra Space Storage Inc. (NYSE: EXR) ("Extra Space") and Life Storage, Inc. (NYSE: LSI) ("Life Storage") announced today that the two companies have entered into a definitive merger agreement by which Extra Space will acquire Life Storage in an all-stock transaction. The transaction brings together two industry-leading platforms, and the combined company is expected to have a pro forma equity market capitalization of approximately $36 billion and total enterprise value of approximately $47 billion.
>
> Under the terms of the agreement, Life Storage shareholders will receive 0.8950 of an Extra Space share for each Life Storage share they own, representing a total consideration of approximately $145.82 per share based on Extra Space's share price close on March 31, 2023. At closing, Extra Space and Life Storage shareholders are expected to own approximately 65% and 35% of the combined company, respectively. The respective boards of directors of both Extra Space and Life Storage have unanimously approved the transaction.
>
> "We are impressed with the management team's strategic repositioning of the Life Storage portfolio over the last seven years, creating a highly diversified portfolio of quality storage assets in strong growth markets," said Extra Space CEO Joe Margolis. "The business combination is highly synergistic, creating an even stronger combined company that will drive long-term, outsized operational and external growth opportunities through scale efficiencies, higher retained cash flow, data analytics, third-party management relationships and more. We look forward to welcoming the Life Storage family to Team Extra Space and bringing our organizations together to drive enhanced growth."
>
> The transaction will increase the size of Extra Space's portfolio by more than 50% by store count with the addition of Life Storage's 1,198 properties, including 758 wholly-owned, 141 joint venture, and 299 third-party managed stores. In total, the transaction adds over 88 million square feet to the portfolio. The combined portfolio represents the largest storage operation in the country with over 3,500 locations, over 264 million square feet and serving over two million customers.
>
> Joseph Saffire, Chief Executive Officer of Life Storage said, "Following a deliberate and comprehensive review, the Life Storage Board unanimously concluded that the pending transaction with Extra Space maximizes value today and is the transaction most likely to deliver superior long-term returns for our shareholders. Together with Extra Space, we expect to accelerate growth while maintaining our customer-centric focus and commitment to continued

innovation. We are also pleased that Life Storage shareholders will participate in the tremendous upside of the combined Extra Space and Life Storage platform through a significant ownership stake in the combined company. I want to thank the Life Storage team for their continued unrelenting dedication and commitment to our business and customers."

The combination of Extra Space and Life Storage is expected to result in significant strategic, operational and financial benefits to shareholders, including:

- **Transformative scale**: Combines two industry leaders with long track records of outperformance and creates the largest storage operator and the 6th largest REIT in the RMZ. Uniting Extra Space's and Life Storage's leading technology and data analytics platforms will also allow the combined company to continue to drive same-store net operating income growth while providing exceptional service to customers.

- **Enhanced diversification**: Creates highly diversified portfolio of quality storage assets in markets benefiting from compelling demand and population demographic trends.

- **Significant synergy opportunity:** The transaction is expected to generate at least $100 million in annual run-rate operating synergies from G&A and property operating expense savings as well as improved property operating revenue and tenant insurance income. Extra Space has a demonstrated track record of integrating stores onto its platform and delivering outsized returns to shareholders. Extra Space will work closely with the Life Storage team to achieve anticipated synergies and intends to leverage Life Storage's talented workforce.

- **Embedded growth drivers:** The combined businesses' scaled and growing third-party management, joint venture and bridge loan platforms will create a robust pipeline for accelerated external growth.

- **Positive financial impact:** The transaction is expected to be accretive to Core FFO per share within the first year of closing and be leverage neutral.

Extra Space will retain its name and continue to trade on the NYSE under the ticker "EXR". Kenneth W. Woolley will remain Chairman of the Board and Joseph D. Margolis will remain as CEO and Director. The Extra Space Board will be expanded from 10 to 12 directors and will consist of nine directors from Extra Space's Board and three directors from Life Storage.

The transaction is currently expected to close in the second half of 2023, subject to the approval of Extra Space and Life Storage shareholders and satisfaction of other customary closing conditions.

Citigroup Global Markets Inc. is acting as lead financial advisor and Latham & Watkins LLP is serving as legal advisor to Extra Space. J.P. Morgan Securities LLC is also serving as a financial advisor to Extra Space. Wells Fargo Securities and BofA Securities are acting as financial advisors and Hogan Lovells US LLP and Quinn Emanuel Urquhart & Sullivan LLP are serving as legal advisors to Life Storage.

**The Materially Incomplete and Misleading Proxy Statement**

22. On June 6, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Life Storage stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for Life Storage, Extra Space, and the combined company; and (ii) the financial analyses that support the fairness opinions provided by the Company's financial advisors, Wells Fargo and BofA.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Life Storage, Extra Space, and the Combined Company*

23. The Proxy Statement fails to disclose material information concerning the financial projections for Life Storage, Extra Space, and the combined company.

24. With respect to Life Storage management's forecasts, the Proxy Statement fails to disclose all line items underlying (i) Total Consolidated Storage Rental NOI; (ii) Total Ancillary Business NOI; (iii) Total Income from Joint Ventures; (iv) EBITDA; (v) Unlevered Free Cash Flow; (vi) Core FFO; and (vii) Adjusted Core FFO per share.

25. With respect to Extra Space management's forecasts for Extra Space on a standalone basis, the Proxy Statement fails to disclose all line items underlying (i) Total Consolidated Storage Rental NOI; (ii) EBITDA; (iii) Core FFO; and (iv) Unlevered Free Cash Flow.

26. In addition, according to the Proxy Statement, in connection with its fairness opinion, Wells Fargo "reviewed certain estimates prepared by the managements of Life Storage and Extra Space as to the potential cost savings and synergies expected by such managements to be achieved as a result of the transaction [the ('Synergies).]" Proxy Statement at 80. Similarly, in connection with BofA's fairness opinion, BofA "reviewed certain estimates as to the amount and timing of cost savings and revenue enhancements, net of cost to achieve, anticipated by the management of Life Storage, based on forecasts provided by Extra Space to result from the mergers, referred to . . . as the 'synergies'[.]" *Id.* at 88. The Proxy Statement fails, however, to disclose a summary of the Synergies provided by Life Storage and Extra Space management and relied upon by Wells Fargo and BofA in connection with the financial analyses underlying their respective fairness opinions.

27. Similarly, the Proxy Statement further fails to disclose a summary of the "pro forma projections" that Wells Fargo discussed with the Board, and the Board approved for use by Wells Fargo in connection with the financial analyses underlying its fairness opinion. *See id.* at 85.

*Material Misrepresentations and/or Omissions Concerning Wells Fargo's and BofA's Financial Analyses*

28. The Proxy Statement fails to disclose material information concerning Wells Fargo's financial analyses.

29. With respect to Wells Fargo's *Life Storage Dividend Discounted Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; and (ii) the inputs and assumptions underlying the discount rates ranging from 10.00% to 11.00%.

30. With respect to Wells Fargo's *Life Storage Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Wells Fargo.

8

31. With respect to Wells Fargo's *Extra Space Dividend Discounted Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) projected core funds from operations per share for the year ending December 31, 2027; and (iii) the inputs and assumptions underlying the discount rates ranging from 10.00% to 11.00%.

32. With respect to Wells Fargo's *Extra Space Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Wells Fargo.

33. With respect to Wells Fargo's *Combined Company Pro Forma Dividend Discount Analysis-based Illustrative Value Creation Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the combined company's projected dividends on shares of combined company common stock for the period from December 31, 2023 through December 31, 2026; (ii) the combined company's terminal values; (iii) the combined company's projected core funds from operations per share for the year ending December 31, 2027; and (iv) the inputs and assumptions underlying the discount rates ranging from 9.50% to 10.50%.

34. The Proxy Statement also fails to disclose material information concerning BofA's financial analyses.

35. With respect to BofA's *Discounted Cash Flow Analysis* of Life Storage, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 7.8% to 9.2%; and (iii) Life Storage's net debt.

36. With respect to BofA's *Selected Publicly Traded Companies Analysis* of Life Storage, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for

9

each of the selected companies analyzed by BofA; and (ii) the Company's calendar year 2023 and 2024 estimated FFO.

37. With respect to BofA's analysis of stock price targets for Life Storage, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

38. With respect to BofA's *Discounted Cash Flow Analysis* of Extra Space, the Proxy Statement fails to disclose a quantification of: (i) Extra Space's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.9%; and (iii) Extra Space's net debt.

39. With respect to BofA's *Discounted Cash Flow Analysis* of Extra Space taking into account the per share impact of the pro forma Synergies, the Proxy Statement fails to disclose a quantification of: (i) synergies from revenue, tenant insurance, operating expenses and G&A, as well as the dis-synergies from property taxes expected to result from the Proposed Transaction; (ii) the synergized cash flows used in the analysis; (iii) the terminal values for the Synergies; (iv) the inputs and assumptions underlying the discount rates ranging from 7.6% to 9.0%; and (v) Extra Space's fully diluted outstanding shares.

40. With respect to BofA's *Selected Publicly Traded Companies Analysis* of Extra Space, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies analyzed by BofA; and (ii) Extra Space's calendar year 2023 and 2024 estimated FFO.

41. With respect to BofA's analysis of stock price targets for Extra Space, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

42. In sum, the omission of the above-referenced information renders statements in the "Certain Life Storage Unaudited Prospective Financial Information," "Certain Extra Space

Unaudited Prospective Financial Information," and "Opinion of Life Storage's Financial Advisors" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Life Storage will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Life Storage**

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Life Storage is liable as the issuer of these statements.

45. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

46. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

49. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Life Storage within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Life Storage and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

55. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Life Storage, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  June 15, 2023                                    **ACOCELLI LAW, PLLC**

By  */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*